**O**

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

JULIE LAPPER,

                 Plaintiff,

     v.

SUNTRUST MORTGAGE, N.A.;
SUNTRUST MORTGAGE, LLC; SUN
TRUST LOAN SERVICES; and DOES 1–
10,

                 Defendants.

Case No. 2:13-cv-04041-ODW(MANx)

**ORDER GRANTING TEMPORARY
RESTRAINING ORDER [5]**

## I.   INTRODUCTION

Plaintiff Julie Lapper applies to the Court ex parte for a temporary restraining order enjoining the June 10, 2013 foreclosure sale of her home.  (ECF No. 5.)  For the reasons that follow, the Court **GRANTS** Lapper's application.

## II.   FACTUAL BACKGROUND

In 2007, Lapper took out a home-mortgage loan from Defendant SunTrust Mortgage.  (Compl. ¶ 2.)  The loan was secured by a promissory note and deed of trust encumbering Lapper's primary residence in Hermosa Beach, California.  (*Id.*)

As tends to happen in these cases, Lapper defaulted on her loan at an unspecified time "when the economy faltered and Plaintiff's income was diminished after the Great Recession of 2008."  (Compl. ¶ 3.)  Lapper then began negotiating with

1  SunTrust in early 2010 to secure a loan modification; these negotiations apparently
2  continued until just recently.  (Compl. ¶ 4.)  During these negotiations, SunTrust
3  repeatedly "demanded the same income and expense information," which Lapper
4  submitted "time and time again." (Compl. ¶ 5.)  Despite Lapper's diligent compliance
5  and consistent efforts to following up on her application, SunTrust invariably denied
6  receipt of her financial information.  (*Id.*)  And to make things more difficult, Lapper
7  was allegedly never provided a single point of contact "and has been repeatedly hung
8  up on, transferred into nothingness, [and] transferred to multiple persons with no
9  knowledge of her file." (Compl. ¶ 10.)

10      Finally, on June 3, 2013, Lapper was informed that "she was ineligible for a
11  loan modification because the 'investor' was not a [HAMP] participating entity."
12  (Compl. ¶ 10.)  A foreclosure sale is presently set for Monday, June 10, 2013.

13              **III.   LEGAL STANDARD**

14      The purpose of a temporary restraining order is to preserve the status quo and to
15  prevent irreparable harm "just so long as is necessary to hold a hearing, and no
16  longer." *Granny Goose Foods, Inc. v. Brotherhood of Teamsters*, 415 U.S. 423, 439
17  (1974).   Thus, a TRO may be issued only upon a showing "that immediate and
18  irreparable injury, loss, or damage will result to the movant before the adverse party
19  can be heard in opposition." Fed. R. Civ. P. 65(b)(1)(A).

20      "The standard for issuing a temporary restraining order is identical to the
21  standard for issuing a preliminary injunction." *Lockheed Missile & Space Co., Inc. v.*
22  *Hughes Aircraft Co.*, 887 F. Supp. 1320, 1323 (N.D. Cal. 1995); *see also Stuhlbarg*
23  *Intern. Sales Co., Inc. v. John D. Brushy and Co., Inc.*, 240 F.3d 832, 839 n. 7 (9th
24  Cir.2001) (standards for issuing a TRO are "substantially identical" to those for
25  issuing a preliminary injunction).  A plaintiff seeking a preliminary injunction must
26  establish: (1) a likelihood of succeed on the merits; (2) a likelihood that plaintiff will
27  suffer irreparable harm in the absence of preliminary relief; (3) that the balance of
28  / / /

1   equities tips in his favor; and (4) that an injunction is in the public interest.  *Winter v.*
2   *Natural Res. Def. Council*, 555 U.S. 7, 20 (2008).

3        The Ninth Circuit employs a "sliding scale" approach to *Winter*'s four-element
4   test.  *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011).
5   Under this approach, a preliminary injunction may issue if the plaintiff raises "serious
6   questions going to the merits" and demonstrates that "the balance of hardship tips
7   sharply towards the plaintiff's favor," but only so long as the plaintiff also
8   demonstrates that irreparable harm is *likely*—not just possible—and the injunction is
9   in the public interest.  *Id.* (internal quotation marks omitted).

10       Finally, "a preliminary injunction is an extraordinary remedy never awarded as
11   of right." *Winter*, 555 U.S. at 24.  Thus, a district court should enter preliminary
12   injunctive relief only "upon a clear showing that the plaintiff is entitled to such relief."
13   *Id.* at 22.

## IV.   DISCUSSION

15       Lapper contends she has fallen victim to "dual tracking"—a relatively common
16   process by which the lender negotiates a loan modification with a borrower in default
17   while simultaneously pressing forward with the foreclosure process.  The result of this
18   tactic "is that the borrower does not know where he or she stands, and by the time
19   foreclosure becomes the lender's clear choice, it is too late for the borrower to find
20   options to avoid it." *Jolley v. Chase Home Finance, LLC*, 213 Cal. App. 4th 872, 904
21   (2013).

22       To combat this maneuver, and to encourage mortgage servicers to offer loan
23   modifications, the California legislature passed "The California Homeowner Bill of
24   Rights." *See* Cal. Civ. Code § 2923.6(b).  The Homeowner Bill of Rights became
25   effective on January 1, 2013.  As is relevant here, the Homeowner Bill of Rights
26   explicitly prohibits dual tracking: "If a borrower submits a complete application for a
27   first lien loan modification . . . [the] mortgage servicer, mortgagee, trustee,
28   beneficiary, or authorized agent *shall not* record a notice of default or notice of sale,

or conduct a trustee's sale, while the complete first lien modification is pending." *Id.* § 2923.6(c) (emphasis added).  Then, once the borrower submits the modification application, a foreclosure sale cannot occur until (1) the "mortgage servicer makes a written determination that the borrower is not eligible" for the modification and the 30-day appeal period expires; or (2) the borrower does not accept an offered modification within 14 days; or (3) the borrower accepts a modification but later defaults under the modified terms. *Id.* § 2923.6(c)–(d).

The Homeowners Bill of Rights also requires lenders to a designate a "single point of contact" for borrowers to request foreclosure alternatives and provide the borrower one or more direct means of communicating with that point of contact. *Id.* § 2923.7.  Like the dual-tracking provision, the single-point-of-contact provision "is intended to prevent borrowers from being given the run around, being told one thing by one bank employee while something entirely different is being pursued by another." *Jolley*, 213 Cal. App. 4th at 904–905.

Likely because it's obviously a slipshod copy-and-paste job,[1] Lapper's Complaint contains several inconsistencies.  Most notably, Lapper contends first that a foreclosure sale has been scheduled for June 10, 2013 (Compl. ¶ 13), yet she later contends that Defendants "conducted a trustee's sale on April 24, 2013" (Compl. ¶ 19).  Lapper also contends she was negotiating with SunTrust from "the second quarter of 2010 and continuing through the second quarter of 2013," but immediately thereafter alleges that "[t]hese activities were continuous for at least 20 months." (Compl. ¶ 4.)

But these inconsistencies aside, Lapper does allege sufficient facts that, if true, suggest patent violations of the Homeowners Bill of Rights.  While Lapper does not establish when SunTrust recorded the notice of default or notice of sale here, she does allege that she "never received any written response to her requests for HAMP

---

[1] *Compare* Compl., ECF No. 1, *with* Compl., *Singh v. Bank of Am., N.A*, No. 2:13-cv-00729-MCE-AC, ECF No. 1 (E.D. Cal. filed Apr. 15, 2013).

consideration or for a loan modification." (Compl. ¶ 11.) Thus, the only applicable predicate[2] for a trustee's sale to take place under § 2923.6(c)(1)—written notice of a determination and expiration of the 30-day appeal period—has not been met. Further, SunTrust's alleged failure to appoint a single point of contact after January 1, 2013—a clear violation of § 2923.7—undoubtedly exacerbated Lapper's inability to forestall foreclosure. Lapper has therefore established a likelihood of success on the merits at this early stage, and the June 10 foreclosure sale appears premature.

Lapper has also established the remaining TRO factors. She has demonstrated that she will suffer irreparable harm insofar as she will lose her home, which "like all real property, is unique and special to Plaintiff such that money damages and legal remedies are and will be insufficient to compensate" her. (Compl. ¶ 14.) Further, the balance of equities tips in Lapper's favor, as a TRO merely delays Defendants' right to foreclosure. Finally, a TRO at this stage is in the public interest insofar as it vindicates a recently enacted California statute designed to protect borrowers in Lapper's very position.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

---

[2] Because Lapper contends she was denied a modification, the other predicates—her failure to accept a modification in 14 days or her default on terms of a prior modification agreement—are not relevant here. *See* Cal. Civ. Code § 2923.6(c)(2)–(3).

## V.    CONCLUSION

To preserve the status quo until the Court can conduct a hearing on Plaintiff Julie Lapper's motion for a preliminary injunction, the Court hereby **ORDERS** Defendants to cancel the pending June 10, 2013 foreclosure sale.  The Court sets a preliminary-injunction hearing for June 21, 2013, at 3:00 p.m..  Lapper's motion must be filed no later than Monday, June 10, 2013.  Defendants' opposition is due no later than Friday, June 14, 2013, and Lapper's reply (if any) is due no later than Monday, June 17, 2013.

**IT IS SO ORDERED.**

June 7, 2013

_____

**OTIS D. WRIGHT, II**
**UNITED STATES DISTRICT JUDGE**